UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DEBORAH MONACO,

        Plaintiff,

v.                            Case No: 2:15-cv-685-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## OPINION AND ORDER

Plaintiff Deborah Monaco seeks judicial review of the denial of her claim for disability, disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs, and the applicable law.   For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

### I.    Issues on Appeal[1]

Plaintiff raises two primary issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly evaluated the opinion of Plaintiff's treating physician; (2) whether substantial evidence supports the determination of the ALJ concerning Plaintiff's Residual Functional Capacity ("RFC"), specifically that she can perform a full range of light work with no mental limitations; and (3) whether the ALJ's decision

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

at step two that Plaintiff's mental limitations are not severe is supported by substantial evidence.

## II.    Procedural History and Summary of the ALJ's Decision

On August 11 and August 15, 2011, respectively, Plaintiff filed applications for disability, DIB and SSI alleging a disability onset date of July 20, 2009.   Tr. 165-69, 170-78.   Plaintiff alleged disability due to arthritis in her left hand, knee and foot; lower back pain; fibromyalgia; anxiety and depression; lack of memory and restless leg syndrome.   Tr. 198.   The applications were denied initially and upon reconsideration.   Tr. 105-17, 119-30.   Plaintiff requested and received a hearing, which was held before ALJ M. Dwight Evans on November 13, 2013.   Tr. 44-64. Plaintiff was represented by counsel during the hearing, and Plaintiff and a vocational expert ("VE") testified at the hearing.   Tr. 46.

On April 18, 2014, the ALJ issued a decision finding Plaintiff not disabled from July 20, 2009 through the date of the decision.   Tr. 30-39.   At step one, the ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, and had not engaged in substantial gainful activity since July 20, 2009, the alleged onset date.   Tr. 32.   At step two, the ALJ determined that Plaintiff has the following severe impairments: fibromyalgia and low back pain with degenerative changes.   *Id.*   At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."   Tr. 35.   The ALJ then determined that Plaintiff has the

RFC to perform the full range of light work, finding she is "able to occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and has unlimited ability to push and pull including operation of hand and/or foot controls."   Tr. 35-36.   Next, the ALJ found Plaintiff is capable of performing her past relevant work as an accountant, which is a sedentary position with a specific vocational preparation ("SVP") level of 8, considered skilled work.   Tr. 38.   The ALJ noted that this work "does not required the performance of work-related activities precluded by the claimant's residual functional capacity."   *Id.*   He therefore concluded she has not been under a disability from July 20, 2009 through the date of the decision.   Tr. 39.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. Tr. 1-7.   Accordingly, the ALJ's decision is the final decision of the Commissioner. Plaintiff filed a Complaint in this Court on November 3, 2015.   Doc. 1.   Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review.   Docs. 17, 18.

## III.   Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).   The Commissioner has established a five-step

sequential analysis for evaluating a claim of disability.   *See* 20 C.F.R. §416.920.

The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)-(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011). The claimant bears the burden of persuasion through step four; and, at step five, the burden shifts to the Commissioner.   *Atha*, 616 F. App'x at 933; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).   The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion."   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence

is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Commissioner,* 2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971)).

## IV.   Discussion

### a. Whether the ALJ properly evaluated the opinion of Plaintiff's treating physician

Plaintiff first argues that the ALJ did not provide good cause for rejecting the opinion of Plaintiff's treating physician, Sebastian Draulans, M.D., with respect to both her physical and mental impairments.   Doc. 25 at 8.   The Commissioner responds that substantial evidence supports the weight the ALJ gave to the treating physician's opinion, and he properly articulated his reasons for not accepting the "extreme and myriad" limitations opined by Dr. Draulans.   Doc. 26 at 9-10.   On this point, the Court agrees with the Commissioner.

When determining how much weight to afford an opinion, the ALJ considers whether there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion.   20 C.F.R. § 404.1527(c)(1)-(6).   Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2).   Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a

whole.   SSR 96-2p; *Crawford v. Comm'r*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996).   "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"   *Winschel,* 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

Dr. Draulans was Plaintiff's primary care/family doctor, who the record shows began treating Plaintiff for her alleged impairments beginning in 2010.   Tr. 34, 266-70.   The only opinion at issue here, however, is an RFC assessment completed by Dr. Draulans on October 22, 2013, in which Dr. Draulans opined that Plaintiff had numerous and extensive physical and mental limitations that affected her ability to work.   Tr. 442-43; Doc. 25 at 9.   Specifically, Dr. Draulans indicated on the form that Plaintiff cam never lift and/or carry any weight (including less than 10 pounds), she can stand and/or walk less than 2 hours in an 8-hour workday, she can sit less than 2 hours in an 8-hour workday; except for kneeling, which she can perform 1/3 or the workday, she can perform other postural limitations (climbing, balancing, stooping, bending, crouching and crawling) less than 1/3 of the workday; and she can reach in all directions, finger and feel less than 1/3 of the workday in her left hand because of her carpal tunnel syndrome.   Tr. 442.

The ALJ gave this opinion little weight, noting it was not supported by the medical evidence of record as a whole.   Tr. 34.   Throughout his opinion, the ALJ outlined the medical evidence Plaintiff provided to support her physical limitations, noting significant gaps in her treatment history and relatively infrequent visits to her doctors considering her allegedly disabling symptoms at the time of alleged onset date, July 20, 2009.   Tr. 36.   The ALJ noted that Plaintiff's earliest treatment record for her fibromyalgia pain was with Dr. Draulans on May 11, 2010.[2]   Tr. 36, 261-65.   During this visit, Plaintiff had symptoms of soft tissue pain, fatigue, depression and anxiety.   Tr. 262.   Dr. Draulans noted these symptoms "are severe and have been present for many years."   *Id.*   Plaintiff had been taking Vicodin, which Dr. Draulans noted was somewhat effective; she stopped taking it and began feeling worse.   *Id.*   Plaintiff's physical examination was normal, and she was ordered to continue with her pain medications, Baclofen and Vicodin, as needed and continue with her Cymbalta.   Tr. 263.

Plaintiff returned several months later, on October 26, 2010, complaining of generalized body aches and anxiety.   Tr. 257.   Dr. Draulans added Soma and Naproxen to Plaintiff's regimen, and in her next visit to him in January 2011, her fibromyalgia and back pain were stable.   Tr. 249-50.   During that visit, Plaintiff reported the sudden death of her husband, which exacerbated her anxiety disorder.

---

[2] There is a treatment record in February 2010, but the reason for the visit was a cough.   Tr. 266-27.   Plaintiff's neurological and musculoskeletal examinations were normal.   Tr. 267.

*Id.* Nonetheless, Dr. Draulans noted Plaintiff's general anxiety disorder was stable, and she should continue her current regimen.   Tr. 250.

Plaintiff's next visit to Dr. Draulans was in July 2011, during which it was noted her fibromyalgia, fatigue and back pain had worsened; Carisoprodol[3] was added to her regimen.   Tr. 245.   During her follow up visit to Dr. Draulans in late October 2011, Plaintiff reported that her low back pain and fibromyalgia were stable. Tr. 490-91.   She was continued on the same medication regimen.   *Id.*

As noted by the ALJ, because of Plaintiff's lack of medical records and treatment for her impairments, she was sent for an internal medicine examination by Munir Rizkallah, M.D., on October 4, 2011.   Tr. 37, 277-79.   At that time, Plaintiff's fibromyalgia pain was under control, and she reported zero pain intensity on a scale of zero to ten with her medication.   Tr. 277.   Dr. Rizkallah noted that Plaintiff has been a chronic smoker, but she was trying to reduce her smoking and was at the time smoking five cigarettes per day.   Tr. 277-78.   She does her laundry twice weekly, showers and dresses herself, but gets fatigued easily.   Tr. 278. Plaintiff appeared in no acute distress, her gait was normal, and she could walk on her heels and toes without difficulty and fully squat.   *Id.*   Her stance was normal, and she needed no help changing for her exam or getting on and off the examination table.   *Id.*   Plaintiff was able to rise from a chair without difficulty.   *Id.*   She had full range of motion in all her joints and spine, her joints were stable and non-tender

---

[3]  Carisoprodol is a muscle relaxer that blocks pain sensations between the nerves and the brain.   https://www.drugs.com/carisoprodol.html (last visited 2/14/2017).

and she had no trigger points.   Tr. 279.   Plaintiff had 5/5 strength in her upper and lower extremities.   *Id.*   An x-ray of Plaintiff's lumbar spine showed minimal scoliosis.   Tr. 280.   Dr. Rizkallah reported her prognosis as stable.   Tr. 279.

Based on the evidence of record, the ALJ properly discounted Dr. Draulans' October 2013 RFC opinion, because it was inconsistent with the record as a whole, including Dr. Draulans' earlier treatment notes, physical examination findings and objective diagnostic testing results.   *See* SSR 96-2p; *Crawford*, 363 F.3d at 1159-60. As noted by the Commissioner and discussed by the ALJ, substantial evidence of record showed that Plaintiff's fibromyalgia was stable and controlled with medication.   Doc. 26 at 12; Tr. 37.

Dr. Rizkallah found in his October 2011 examination that Plaintiff exhibited no trigger points, she appeared in no acute distress and her pain was controlled by medication (Tr. 277-80), inconsistent with a finding that fibromyalgia is a medically determinable impairment.   *See* SSR 12-2p, 2012 WL 3104869, at *3 (requiring evidence of widespread pain or at least 11 trigger points for a finding of a medically determinable impairment).   Plaintiff's last visit to Dr. Draulans in October 2011 also indicated that her fibromyalgia and low back pain were stable on Plaintiff's current medication regimen.   Tr. 249-50.

Furthermore, Dr. Rizkallah's physical examination performed in October 2011 showed that plaintiff had a normal gait, could heel and toe walk without difficulty, could fully squat, and had full range of motion in all joints, no trigger points, normal reflexes and sensation, and full strength in all extremities.   Tr. 37, 277-79.   Her

lumbar x-ray taken at that time also showed minimal scoliosis with degenerative changes in the lower spine.   Tr. 280-81.   Such objective findings support the ALJ's decision to accord the extreme limitations opined by Dr. Draulans little weight, and he properly explained his reasons for doing so.   Tr. 36-38.

Plaintiff also takes issue with the weight given to Plaintiff's mental limitations in Dr. Draulans' RFC assessment.   Doc. 25 at 13.   Dr. Draulans opined that Plaintiff had nonexertional limitations of anxiety, panic and depression that would limit her ability to concentrate; and follow, carry out, remember and understand simple instructions less than one-third of the workday and use judgment, respond to supervision and deal with changes in a routine work setting only one-third of the workday.   Tr. 443.   In his detailed discussion of Plaintiff's mental health treatment records, which the ALJ pointed out were sparse, he addressed Dr. Draulans' mental RFC assessment as well as his psychiatric review technique ("PRT") forms.[4]   The ALJ accorded Dr. Draulans' opinions little weight,

> as they are not supported by the medical evidence as a whole.   Dr. Draulans is [a] family primary care physician and any opinions relating to the claimant's mental abilities are outside his area of expertise.   Moreover, the mental status examinations in the record do not support his opinion.   Consequently, the opinions are not accepted (Ex. 8F).

---

[4] Plaintiff only challenges the weight given to Dr. Draulans' RFC assessment, not his PRT forms.   *See generally*, Doc. 25.   Nonetheless, the Court finds no error with the ALJ likewise giving little weight to Dr. Draulans' PRT forms.

Tr. 34.   The Court finds substantial evidence supports the ALJ's decision as to the weight given both to Dr. Draulans' physical and mental RFC, the latter of which is discussed in more detail in the following section of this opinion.

> b.   *Whether substantial evidence supports the determination of the ALJ at step four that Plaintiff can perform her past relevant work*

Plaintiff next argues that at step four of the five-step sequential evaluation process, the ALJ "failed to determine the effect Plaintiff's limitations in concentration, persistence, and pace [have] on her RFC given the evidence that these limitations have more than a minimal impact on [] [Plaintiff's] past relevant work as [an] accountant, which is a highly skilled job with a specific vocational preparation level of eight."   Doc. 25 at 14.   Plaintiff makes several arguments on this issue:   (1) the evidence of Plaintiff's mental limitations, opined by Dr. Kelly and others, precludes her ability to perform her "highly skilled past work" as an accountant (*Id.* at 15-16); (2) the ALJ's conclusion that Plaintiff has mild limitations in concentration persistence and pace suggests she cannot perform her past relevant work (*Id.* at 16-8); and (3) the ALJ failed to weigh and explain whether he rejected or accepted Dr. Kelly's opinion concerning Plaintiff's limitations in her ability to deal with complex instructions (Tr. 18-20).

It is important to note that at the fourth step of the sequential evaluation process, it is the claimant who bears the burden of demonstrating that she cannot return to her past relevant work.   *Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007) (citing *Lucas v. Sullivan,* 918 F.2d 1567, 1571 (11th Cir.1990)).   The ALJ assesses the claimant's RFC to determine whether the claimant can perform past

relevant work despite her alleged impairments. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). To support a conclusion that the claimant is able to return to her past relevant work, the ALJ must consider all the duties of that work and evaluate the claimant's ability to perform them in spite of her impairments. *See Lucas,* 918 F.2d at 1574. An ALJ may consider a VE's opinion when making this determination. 20 C.F.R. § 404.1560(b)(2). "In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (citation omitted). Errors may be harmless if they do not prejudice the claimant. *See Diorio v. Heckler,* 721 F.2d 726, 728 (11th Cir.1983).

Here, the ALJ found that Plaintiff was capable of performing her past relevant work as an accountant, Dictionary of Occupational Titles ("DOT") #160.162-018, which is considered sedentary in exertional level with an SVP of 8 – skilled work. Tr. 38. The ALJ found that this work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity." *Id.* The ALJ found that in comparing Plaintiff's RFC with the physical and mental demands of this work, Plaintiff is able to perform it as generally performed. Specifically, he stated:

> The claimant's ability to perform light work allows her to perform work at an equal or lesser exertional level, and she does not have a mental impairment or other nonexertional limitations that preclude her from performing skilled work.

Tr. 39. In making this finding, the ALJ presented the following hypothetical to the VE:

> Assume, if you would, a hypothetical individual who was 51 years old at time of her alleged onset date; who is currently 55 years of age. She has an exertional RFC, essentially, of light -- the full range of light. That is the ability to lift and carry up to 20 pounds occasionally, 10 pounds frequently; can stand and/or walk about six hours in an eight-hour work day and can sit for about six hours in a[n] eight-hour work day. Ability for pushing and/or pulling would be unlimited except up to the extent of her ability for lifting and/or carrying.
>
> Would such a hypothetical individual as that be able to perform any of the past work of Mrs. Monaco?

Tr. 61. The VE answered in the affirmative. *Id.* Next, the ALJ asked whether her response to his question is inconsistent with the information in the DOT, to which the VE replied that it is consistent. *Id.* at 62.

Plaintiff first argues that the ALJ's conclusion is inconsistent with the mental status findings of the consultative examiner, Nancy Kelly, Ph.D., in that during that examination Plaintiff could remember none of three objects after five minutes, could not count five digits backward and could not count serial threes. Doc. 25 at 14; Tr. 274. She also asserts that the ALJ's finding is "likely inconsistent" with his conclusion that Plaintiff has mild limitations in concentration, persistence and pace, because the accountant job is "highly skilled." Doc 25 at 14, citing Tr. 33. Plaintiff also argues that the ALJ failed to weigh Dr. Kelly's opinion concerning her ability to deal with complex instructions and failed to include these limitations in the RFC. Doc. 25 at 14-15.

As to Plaintiff's first argument, the Court finds that substantial evidence in the record, including Dr. Kelly's opinion, supports the ALJ's determination that Plaintiff's mental limitations were not severe and did not preclude her from

performing her past relevant work.   At step two of the sequential evaluation process, the ALJ found that Plaintiff's alleged mental impairments were not severe, as they did not significantly limit her mental ability to perform basic work activities.   Tr. 33, citing 20 C.F.R. §§ 404.1521 and 416.921.   As such, the ALJ found "that [Plaintiff's] medically determinable mental impairments of affective and anxiety disorders considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere."   Tr. 33.   In doing so, the ALJ noted the lack of medical records with respect to the alleged mental impairments to support a finding of severity.   *Id.*

The ALJ first discussed Plaintiff's admission to the hospital for an overdose in May 2011, in which she was involuntarily placed in inpatient mental health treatment under Florida's Baker Act[5] and hospitalized for several days.   Tr. 33, 317-28.   Plaintiff denied feeling suicidal and instead said the overdose was due to memory problems, reporting that she had been depressed since she lost her husband suddenly the previous January.   Tr. 321.   Plaintiff stated that she has battled depression since childhood.   Tr. 436.   Plaintiff was stabilized on Cymbalta, and later that month described that her crisis unit admission was an "overreaction," and she did not intentionally overdose.   Tr. 33, 317-28, 429.

Because of her lack of mental health treatment records, Plaintiff was referred to Nancy Kelly, Ps.D., for a consultative psychological evaluation in October 2011. Tr. 33, 272-75.   Plaintiff drove herself to the examination.   Tr. 272.   Other than

---

[5] Fla. Stat. § 394.467.

the hospitalization for her inadvertent overdose, Plaintiff had received no outpatient treatment after that time and denied any suicidal ideations or plans.   *Id.*   With respect to her current functioning, Plaintiff described:

> her sleep patterns as normal with the use of medication. She describes symptoms related to depression and anxiety including dysphoric moods, crying spells, irritability, difficulties with concentration, and a general fear of being overwhelmed when speaking with too many people. No symptoms reported related to panic attacks, mania or thought disorder by the claimant. Cognitive symptoms include difficulties with concentration and short-term memory deficits.

*Id.*   Plaintiff's overall demeanor was cooperative and her manner of relating was adequate in her mental status examination, she was appropriately dressed and had appropriate eye contact.   Tr. 273.   Her thought processes were coherent and goal directed with no evidence of delusions, hallucinations or paranoia.   *Id.*   Ms. Kelly found Plaintiff's attention and concentration to be "mildly impaired," which Ms. Kelly attributed to anxiety in the evaluation.   Tr. 274.   Plaintiff was able to complete a simple counting exercise and perform simple calculations, but could not complete serial 3s accurately.   *Id.*   Plaintiff's recent and remote memory skills appeared impaired, again which Ms. Kelly attributed to anxiety in the evaluation.   *Id.* Plaintiff's intellectual functioning appeared average and her general fund of information was appropriate to her experience.   *Id.*   Plaintiff reported to Ms. Kelly that she was able to complete her activities of daily living independently, with some limitations due to fatigue, and described her family relationships as "very supportive."   *Id.*   With respect to Plaintiff's vocational capacity, Ms. Kelly concluded:

> [I]t appears the claimant is able to understand and follow simple
> directions, and perform simple tasks independently. It appears she
> would be able to maintain attention, a regular schedule and learn new
> tasks. She may have mild difficulties performing complex tasks
> independently. It appears she is able to make appropriate decisions.
> She may have mild difficulties relating adequately with others and
> appropriately dealing with stress. Difficulties may be caused by
> psychiatric symptoms.
>
> Results of the present evaluation appear to be consistent with
> psychiatric symptoms, but in itself this does not appear to be
> significant enough to interfere with the claimant's ability to function
> on a daily basis.

Tr. 274-75.   Ms. Kelly recommended that Plaintiff receive individual psychological therapy, and noted her prognosis as fair, given her current level of functioning.   Id. at 275.

The ALJ discussed this opinion in detail, and further noted that Plaintiff did not return to Lee Mental Health until June 2013, when her lawyer sent her there for an evaluation for depression.   Tr. 33-34, 430-35.   During that visit, Plaintiff stated that she really did not know why she was there.   Tr. 430.   While the ALJ noted during that visit Plaintiff's mood and affect were depressed, anxious and despairing, Plaintiff reported she experienced no difficulty in performing work or work-like activity and her mental examination was otherwise normal, in that she was oriented in all spheres and had no suicidal or homicidal thoughts.   Tr. 431-34.

The ALJ also discussed the psychiatric review technique assessments completed in October and November 2011 by the Social Security Administration's consultative examiners, Pamela D. Green. Ph.D., and Carlos Perez, Ph.D.   Tr. 34. Both psychologists opined that Plaintiff had only mild limitations, at most, in

activities of daily living and social functioning and in maintaining concentration, persistence or pace; and neither doctor found Plaintiff to have experienced any episodes of decompensation.   Tr. 34, 70-71, 79-80, 90.   Dr. Green also opined that Plaintiff can perform her past relevant work, and her limitations would not prevent her from performing her work as an accountant.   Tr. 73.   She opined that Plaintiff's nonexertional limitations "do not significantly erode the occupational base. . . ."   Tr. 74, 83.   Furthermore, Dr. Perez opined that the "medical records show no evidence of significant impairment in psychosocial functioning.   [Plaintiff] is [activities of daily living] independent.   No significant difficulties in [concentration, persistence or pace]."   Tr. 90.   The ALJ gave these opinions great weight, noting that "[b]ased on the totality of evidence, [Plaintiff] appears to be primarily limited by her physical difficulties and there is no indication of a severe mental impairment at this time."   Tr. 34.   The Court finds no error in this decision.   Findings of fact made by state agency medical and psychological consultants as to the nature and severity of a claimant's impairments must be treated as expert opinion evidence of nonexamining sources by the ALJ, but the ultimate opinions as to whether a claimant is disabled, the severity of a claimant's impairments, the claimant's RFC and the application of vocational factors are exclusively reserved to the Commissioner.   SSR 96-6p; 20 C.F.R. § 404.1527(d)(1)-(2).

Next, the ALJ considered the opinions of Dr. Draulans when he completed Plaintiff mental residual functional capacity assessment and psychiatric review technique forms, and, as discussed above, gave these opinions little weight because

they were not supported by the medical evidence as a whole.   Tr. 34.   The ALJ noted that Dr. Draulans is a family/primary care practitioner, and opinions relating to Plaintiff's mental abilities are outside his area of expertise and are unsupported by the mental status examinations in the record.   *Id.*

Finally, the ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders, and found that Plaintiff has mild limitation in activities of daily living, as she is able to drive and live alone, cooks and does some housework and otherwise accomplishes activities of daily living independently, with some limitations because of fatigue.   Tr. 34.   The ALJ next opined that Plaintiff has mild limitation in social functioning and mild limitation in concentration, persistence or pace.   *Id.*   Although the ALJ noted Plaintiff alleges difficulty with concentration and memory, during her mental status examination, Plaintiff's attention and concentration were mildly impaired due to anxiety in the evaluation.   *Id.*   In the fourth functional area of decompensation, Plaintiff experienced no episodes.   Tr. 35.   Accordingly, the ALJ found Plaintiff's mental impairments to be nonsevere.   *Id.*   The ALJ then considered all of Plaintiff's impairments, severe and nonsevere, in determining her RFC.   Tr. 35-38.   As noted, the ALJ ultimately found that Plaintiff could perform a full range of light work without any mental limitations.   Tr. 35-36.

Although Plaintiff asserts that the findings of Dr. Kelly that Plaintiff could remember zero of three objects after five minutes, and could not count five digits backward or serial threes are inconsistent with the ALJ's opinion, the Court

disagrees, as the overall record supports the ALJ's decision. First, as noted by the ALJ, Dr. Kelly opined that Plaintiff's memory skills during the evaluation appeared impaired because of anxiety in the evaluation. Tr. 33, 274. Plaintiff was able to perform simple calculations during the examination. Tr. 274. With respect to Plaintiff's vocational capacity, Dr. Kelly found that Plaintiff is able to "maintain attention, a regular schedule and learn new tasks." *Id.* Additionally, the ALJ's opinion is supported by the opinions of the agency consultative examiners, who found that Plaintiff's limitations would not prevent her from performing her past work as an accountant or significantly erode the occupational base, and the medical records show no evidence of significant impairment in psychosocial functioning or significant difficulties in concentration, persistence or pace. Tr. 74, 83, 90, 430-35. As noted by the ALJ, there is a paucity of treatment records for Plaintiff's mental health. Tr. 33. To the extent Plaintiff experienced mental health issues, apparently they did not significantly affect her ability in the past to perform her work as an accountant, as she admitted that she has experienced depression since childhood, and yet did not experience difficulty in performing work. Tr. 431, 436.

The Court also finds without merit Plaintiff's argument that the ALJ's opinion that Plaintiff has mild limitations in concentration, persistence and pace "suggests" she cannot perform her past work as an accountant. Doc. 25 at 16. As noted above, the ALJ discussed Plaintiff's mental impairments in detail at step two of the process and found that Plaintiff's mental impairments are not severe; the Court already has found that substantial evidence supports this determination. Tr. 35. After

considering the psychiatric review technique ("PRT") evaluations performed by the agency consultative examiners, he determined that Plaintiff had mild limitations in concentration, persistence and pace.   Tr. 34.   An ALJ "must incorporate the results of the PRT into his findings and conclusions," and the ALJ did so here.   *Winschel*, 631 F.3d at 1180 n.1 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir.2005)).   Although the PRT and RFC evaluations are distinct, the Eleventh Circuit specifically has rejected the argument that the ALJ cannot consider the results of the "former in his determination of the latter."   631 F.3d at 1180. Provided the ALJ at least implicitly accounts for all of a claimant's impairments in his hypothetical question to the VE, substantial evidence will support his decision. *Id.* at 1181.   The ALJ did so here; in fact, after reviewing the evidence of record, he explicitly found that Plaintiff does not have a mental impairment or other nonexertional limitations that preclude her from performing skilled work.   Tr. 38. Moreover, the VE testified that her opinion that Plaintiff could perform her past relevant work was consistent with the DOT.   Tr. 39, 62.   Thus, it was not error for the ALJ to rely on the VE's opinion.   *See Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012).   Furthermore, "[i]n order for a [vocational expert's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question to the vocational expert which comprises all of the claimant's impairments." *Phillips*, 357 F.3d at 1240 n.7 (quotation marks omitted).   "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir.

2007) (citation and quotation marks omitted).   Although an ALJ's hypothetical question must take into account all of a claimant's impairments, *Wilson*, 284 F.3d at 1227, the question need not include impairments that the ALJ has properly determined to be unsupported by the evidence in the record, as the ALJ did here. *Crawford*, 363 F.3d at 1161.

Finally, Plaintiff argues that the ALJ failed to properly weight Dr. Kelly's opinion.   Doc. 25 at 18-20.   The Commission responds that the agency examiners considered Dr. Kelly's evaluation and opined that Plaintiff was only mildly limited in the PRT domains.   Doc. 26 at 19, citing Tr. 79, 90.   The ALJ gave these opinions great weight (Tr. 34); as such, the Commissioner asserts the ALJ implicitly gave Dr. Kelly's opinion great weight.   Doc. 26 at 20.   As discussed in detail above, the Court finds any error in the ALJ failing to specifically state the weight given to Dr. Kelly's opinion to be harmless, because the ALJ discussed in detail and considered Dr. Kelly's opinion in his step two analysis, and the opinion is consistent with his RFC finding.   *See Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 723 (11th Cir. 2014) (citing *Diorio*, 721 F.2d at 728).

> c.   *Whether substantial evidence supports the ALJ's determination at step two that Plaintiff's mental limitations are not severe*

The Court already has addressed above the ALJ's determination at step two, and for the reasons stated finds substantial evidence supports the ALJ's decision. Contrary to Plaintiff's assertion (Doc. 25 at 20-21), the ALJ properly performed a PRT analysis.   Plaintiff's argument that the ALJ erred in his analysis because he did not

consider a single GAF[6] score of 55[7] in 2013 is not persuasive.   Doc. 25 at 22.   GAF scores are no longer endorsed for use in disability programs by the Commissioner and have no "direct correlation to the severity requirements of the mental disorders listings." *Lacina v. Comm'r,* 606 F. App'x 520, 527 (11th Cir. 2015).   Moreover, as discussed, the ALJ considered the June 2013 psychological evaluation and noted that although Plaintiff was depressed and anxious, her mental status examination otherwise was normal.   Tr. 34, 430-34.   Furthermore, a diagnosis alone is insufficient to prove the severity of an impairment.   *Moore*, 405 F.3d at 1208. Instead, Plaintiff must show the effect the impairment has on her ability to work. *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005).   The ALJ's findings on this issue are supported by the record as a whole, and will not be overturned here.

## V.    Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.

---

[6] Global assessment of function (GAF) is a numeric scale (0 through 100) mental clinicians use to rate social, occupational and psychological functioning. See American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, 33 (4th ed. 1994) (DSM IV).

[7] A GAF score of 51 to 60 indicates moderate symptoms or moderate impairment in social, occupational, or school functioning. DSM IV.

ACCORDINGLY, it is hereby

**ORDERED:**

1.     The decision of the Commissioner is **AFFIRMED**.

2.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 16th day of February, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies:

Counsel of record